IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| RONALD KNOX, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:16-cv-01560-LSC |
| | ) | |
| CITY OF TUSCALOOSA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## Memorandum of Opinion

Plaintiff Ronald Knox ("Knox") brings this action against Defendants the City of Tuscaloosa ("the City"); Steven D. Anderson ("Anderson"), individually and in his official capacity as the City's Chief of Police; Brad Mason ("Mason"), individually and in his official capacity as Head of Internal Affairs of the City's police department; and Gregory A. Pimm ("Pimm"), individually and in his official capacity as a police officer for the City. Knox's claims under 42 U.S.C. § 1983 and Alabama state law arise out of his arrest on September 20, 2014, and his subsequent prosecution. Before this Court are motions to dismiss filed by the City (Doc. 6), Anderson and Mason (Doc. 5), and Pimm (Doc. 8). For the reasons explained more fully herein, the motions are due to be granted in part and denied in part.

# I.   BACKGROUND[1]

## A. KNOX'S ARREST

On September 20, 2014, Knox was traveling east on Skyland Boulevard in Tuscaloosa, Alabama. According to Pimm, who was patrolling Skyland Boulevard in his police cruiser, Knox's vehicle was traveling behind the cruiser at such a close distance that Pimm was unable to see Knox's front bumper. When Pimm changed lanes, Knox also changed lanes behind him and continued to weave in and out of traffic and trail other vehicles at an unsafe distance. Pimm pulled Knox over and informed Knox that he had been driving too closely to other vehicles.

Knox asserts that his vehicle began to smoke after Pimm had returned to the police cruiser. Knox got out of his vehicle to investigate the smoke. He maintains that Pimm had not told him to remain in his vehicle. Seeing that Knox had gotten out of his car, Pimm exited his cruiser, drew his weapon, and pointed it at Knox, yelling for Knox to return to his car. Knox alleges that he was "somewhat confused" by Pimm's behavior and repeatedly asked Pimm to stop pointing the weapon at him. Knox then returned to the driver's seat of his vehicle.

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Johnson v. Midland Funding, LLC*, 823 F.3d 1334, 1337 (11th Cir. 2016).

Pimm, who was returning to his cruiser, decided that Knox needed to be detained because he had "violated officer safety" by exiting his vehicle. Pimm placed his weapon in its holster, removed his handcuffs, and approached Knox's vehicle. Because Knox's left arm was partially outside the vehicle, resting on the car door through the open window, Pimm placed one of the handcuffs on it. Although the complaint is unclear on this point, Knox appears to contend that Pimm then used the handcuffs to pull Knox out of the car through the open window. According to Knox, Pimm never informed him that he was under arrest. Pimm twisted Knox's arms behind his back and placed his forearm on Knox's back to force him to the ground. Knox alleges that during the encounter, he continually informed Pimm that he had undergone shoulder surgery and that he was in severe pain.

At some point, Pimm called for backup using the radio attached to his uniform. When other officers arrived, Knox was handcuffed, "face[-]down in a ditch," with Pimm's "knees in his back." Knox refused medical treatment on the scene because he says he feared "having the officers take him for treatment." Knox was then transported to jail. The entire encounter was, according to Knox, captured by the dashboard video camera of Pimm's cruiser.

Knox was charged with following too closely, reckless driving, disorderly conduct, and resisting arrest. After being released on bail, Knox received medical treatment for his injuries.

## B. Knox's Prosecution

A hearing on the charges was initially set to take place on October 8, 2014, in Tuscaloosa Municipal Court. Knox requested the video recording of his arrest prior to the October 8 hearing but did not receive it. During a hearing on October 28, 2014, Knox and his counsel were informed that the video had been requested but was "not available." According to Knox, they were told that the recording had "made it to Internal Affairs."

When Knox appealed his case to the Circuit Court of Tuscaloosa County, his counsel again requested a copy of the video recording. On March 23, 2015, Associate City Attorney Scott Holmes ("Holmes") forwarded Knox's counsel an email that stated, according to Knox, "[A]ttached is the radio recording from Mr. Knox['s] arrest[;] I will provide you a copy of the video when I receive it." Knox filed a discovery motion on August 28, 2015, seeking the video recording.

After being continued several times, Knox's trial began on September 6, 2016. Knox alleges that Holmes informed Knox's counsel prior to the start of the trial that the video recording "would not be available." According to Knox, Pimm

testified at the trial that he "had requested the video be sent to the proper parties for investigation" and that he did not know what had happened to the recording. Knox testified that he knew the dashboard video camera was working during his arrest because "he could see the lights" on the camera. Pimm testified that "he had no reason to believe that the video recorder was not on" at the time of the arrest.

Knox moved for judgment of acquittal after the City rested its case, which was granted as to the resisting arrest charge. The remaining charges were sent to the jury. Knox was found not guilty of reckless driving, not guilty of disorderly conduct, but guilty of following too closely.

## II. STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

## III. Discussion

### A. Excessive Force

Pimm first argues that Knox's excessive force claim is due to be dismissed because the facts alleged in the complaint demonstrate that Pimm's actions were objectively reasonable and that he did not use excessive force in arresting Knox. The success of a § 1983 excessive force claim arising out of an arrest depends on whether the arrest was carried out in an "objectively reasonable" manner. *Penley v. Eslinger*, 605 F.3d 843, 849–50 (11th Cir. 2010). "[I]n order to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights, a court must evaluate a number of factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir. 2002) (internal quotation marks omitted). In short, this Court analyzes "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Id.* at 1197.

Under Knox's version of the facts, Pimm's use of force was objectively unreasonable. Pimm pulled Knox over for "following too closely," which is not a violent or otherwise severe offense. This factor weighs in Knox's favor. The

second factor, whether the suspect poses an immediate threat to the safety of the officers or others, is a much closer question but also weighs slightly in Knox's favor. Although Knox had exited the vehicle ostensibly to look under the hood of his car, Pimm drew his gun and ordered Knox to get back in the car. When Knox complied, Pimm placed his weapon back in its holster and walked back toward his cruiser. Pimm had not told Knox to remain in his car before Knox exited the vehicle to investigate the smoke, and Knox had up to that time been cooperative. This Court recognizes that a reasonable officer may have felt threatened when he noticed Knox out of his vehicle—Pimm clearly felt threatened, as demonstrated by the fact that he drew his weapon. Even so, there is nothing to indicate from the facts alleged in the complaint that Knox posed an immediate threat to Pimm's safety or the safety of others at the time Pimm pulled Knox through the window. Knox had by then complied with Pimm's order to return to the vehicle. Similarly, with respect to the third factor, Knox was not actively resisting arrest or attempting to flee. Pimm had instructed Knox to return to the vehicle, and Knox obeyed and was sitting in the driver's seat. Rather than instructing Knox to exit the vehicle, where he could take Knox into custody, Pimm, according to Knox, handcuffed Knox's left wrist and pulled him out through the driver's side window. Under these circumstances, it is doubtful that a "reasonable officer" would have believed

that such force was necessary to detain a suspect who was then cooperative and accused of a minor offense.

Nonetheless, Pimm contends that he is entitled to qualified immunity with respect to the claim against him in his individual capacity. "[P]ublic officials sued in their individual capacities are entitled to qualified immunity when their actions do not violate 'clearly established statutory or constitutional rights.'" *Tapley v. Collins*, 211 F.3d 1210, 1214 (11th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis deleted). To determine whether a defendant is entitled to qualified immunity, this Court first asks whether such a right "would have been violated under the plaintiff's version of the facts." *Lee*, 284 F.3d at 1194 (emphasis deleted). Having already concluded that Knox's right to be free from the use of excessive force was violated under Knox's version of the facts, this Court next evaluates whether that right was "clearly established" at the time of the defendant's conduct. *Id.*

"For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). "[T]he facts of the case before the court must be materially

similar to the facts in the precedent that clearly establishes the deprivation."

*Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015). For the purpose of the

"clearly established" inquiry, this Court considers only case law from the United

States Supreme Court, the Eleventh Circuit Court of Appeals, and the Alabama

Supreme Court. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). With

respect to the instant matter, this Court has not uncovered any relevant case law,

and Knox has supplied none, finding excessive force in materially similar factual

circumstances.

"[I]n the absence of fact-specific case law, the plaintiff may overcome the

qualified immunity defense when [a] preexisting general constitutional rule applies

'with obvious clarity to the specific conduct in question,' and it must have been

'obvious' to a reasonable police officer that the pertinent conduct given the

circumstances must have been unconstitutional at the time." *Vinyard v. Wilson*, 311

F.3d 1340, 1352 (11th Cir. 2002). The general constitutional rule must be narrow

enough "to give officers notice of unacceptable conduct." *Mercado v. City of

Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). As relevant here, though it may be

clearly established that "gratuitous use of force when a criminal suspect is not

resisting arrest constitutes excessive force," *Hadley v. Gutierrez*, 526 F.3d 1324,

1330 (11th Cir. 2008), this principle is generally applied to defeat qualified

immunity when the officer applies unreasonable force after the suspect is handcuffed or otherwise subdued. *See Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1356 (11th Cir. 2015) (per curiam) ("Our decisions demonstrate that the point at which a suspect is handcuffed and 'pose[s] no risk of danger to the officer' often is the pivotal point for excessive-force claims. We have held a number of times that severe force applied *after* the suspect is safely in custody is excessive." (emphasis in original)); *Saunders v. Duke*, 766 F.3d 1262, 1267–69 (11th Cir. 2014) (collecting cases). At the time Pimm pulled Knox from the vehicle by the handcuffs attached to his left wrist, Knox was not subdued. Therefore, this Court questions whether the rule stated in *Hadley* applies "with obvious clarity" to Pimm's conduct, as Knox has not alleged that Pimm applied any unreasonable force after Knox was handcuffed and lying face-down on the ground.

However, in light of the facts in Knox's complaint, this case falls within the "narrow exception" to "the rule requiring particularized case law" to defeat qualified immunity. *Priester*, 208 F.3d at 926. This exception applies if the defendant's conduct was so egregious that its unlawfulness "was readily apparent to the [defendant], notwithstanding the lack of case law." *Id.* (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (per curiam)). The plaintiff "must show that the official's conduct 'was so far beyond the hazy border between

excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point.'" *Id.* (quoting *Smith*, 127 F.3d at 1419). A consideration of the relevant standard[2] must "inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." *Id.* Here, Pimm ordered Knox to return to his vehicle, and Knox complied by sitting in the driver's seat. Upon walking back to his cruiser, Pimm abruptly decided to detain Knox. He handcuffed Knox's left wrist and, without instructing Knox to exit the vehicle, pulled Knox through the vehicle's open driver's side window. Under his version of the facts, Knox did not pose a threat to Pimm or to the public because he did exactly what Pimm asked him to do. It is difficult to imagine any circumstances under which it is acceptable for an officer to order a suspect to get back into his car and then to pull that cooperating suspect through the car window without the suspect engaging in some further threatening activity. Because Pimm is not entitled to qualified immunity with respect to Knox's excessive force claim at this point in the case, Pimm's motion to dismiss this claim against him in his individual capacity is due to be denied. However, this ruling does

---

[2] As previously discussed herein, this Court considers the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight in evaluating an excessive force claim. *Lee*, 284 F.3d at 1197–98.

not prohibit Pimm from asserting qualified immunity at a later stage of the proceedings when the facts are more fully developed.

Knox's excessive force claim against Pimm in his official capacity as a municipal police officer is evaluated as a claim against the City. *Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005). In order to hold the City liable for Pimm's conduct, Knox must demonstrate that "a deprivation of [his] constitutional rights occurred as a result of an official government policy or custom." *Id.* at 1221. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.* Similarly, "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Id.*

The City contends that Knox fails "to identify with specificity any policy, practice, or custom" that caused the deprivation of his civil rights. However, Knox alleges that the City "tolerated and institutionalized practices" by, among other conduct, "[f]ailing to adequately investigate civilian complaints regarding excessive force" and "suppressing complaints of excessive force against officers in the City of Tuscaloosa and creating a cultural tolerance of unconstitutional behavior." At this initial pleading stage, these allegations are sufficient to show, according to Knox's version of the facts, that the City had a custom of permitting the use of

excessive force by its police officers because it did not act on civilian complaints. The City's motion to dismiss this claim is thus due to be denied.

## B. Assault and Battery

Pimm argues that he is entitled to state-agent immunity with respect to Knox's state-law assault and battery claim. To state a claim for assault and battery under Alabama law, a plaintiff must plead that (1) the defendant touched the plaintiff; (2) the defendant intended to touch the plaintiff; and (3) the touching was conducted in a harmful or offensive manner. *Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010). Because Pimm was acting as a municipal law enforcement officer at the time he engaged in the conduct alleged to constitute an assault and battery, Alabama law provides him "immunity from tort liability . . . in [the] performance of any discretionary function." Ala. Code § 6-5-338. This state-agent immunity applies unless "the governmental agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law" at the time of the act. *Ex parte Cranman*, 792 So. 2d 392, 402 n.13 (Ala. 2000). A police officer who is making an arrest may use reasonable force to do so and has committed assault and battery "only if more force is used than is necessary to effectuate the arrest." *Walker*, 62 So. 3d at 494; *see* Ala. Code § 13A-3-27(a)(1).

Knox alleges that during the arrest, Pimm intentionally "slammed [him] to the ground without cause or provocation," knowing that such conduct would cause injury. These facts are sufficient to state a claim for assault and battery under Alabama law. Further, Pimm is not entitled to state-agent immunity at this point in the litigation because Knox has alleged that Pimm both used more force than necessary to effectuate the arrest and acted willfully with the knowledge that his conduct would injure Knox. *See Thurmond v. City of Huntsville*, 904 So. 2d 314, 319 (Ala. Civ. App. 2004) (stating that discretionary-function immunity will not apply to "acts taken in bad faith, or willful or malicious conduct"). Pimm's motion to dismiss the assault and battery claim against him in his individual capacity is due to be denied.

However, Pimm's motion to dismiss the claim against him in his official capacity is due to be granted. A municipality is not liable for the intentional torts of its employees. *Ex parte City of Tuskegee*, 932 So. 2d 895, 910 (Ala. 2005); *see* Ala. Code § 11-47-190 ("No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality . . . ."). Because Knox has alleged that

Pimm acted intentionally in slamming him to the ground during the arrest, the City cannot be held liable for the injury to Knox caused by Pimm's conduct.

## C. Failure to Supervise/Inadequate Training

It is unclear from the complaint and from the parties' briefs whether Knox intends to plead his claims for negligent supervision and training under Alabama law or under § 1983. To the extent Knox brings the claims under § 1983, they are due to be dismissed because he has failed to allege that the City or Anderson deprived him of some constitutional right. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (stating that § 1983 "creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution" (internal quotation marks and citations omitted)).

If Knox seeks to bring these claims under Alabama law, only his claim against Anderson is due to be dismissed. To establish a claim for negligent supervision or training under Alabama law, a plaintiff must demonstrate that (1) the employee committed "wrongful conduct" or was incompetent in the course of his employment; (2) the employer knew or should have known of the employee's incompetence; and (3) the employee's incompetence caused injury to the plaintiff. *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001); *see Jones Express, Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010); *Collins v. Wilkerson*,

679 So. 2d 1100, 1103 (Ala. Civ. App. 1996). Knox has alleged facts showing that the City was aware—or at least should have been aware—of the misconduct of its police officers. Specifically, Knox claims that the City did not "adequately investigate civilian complaints regarding excessive force" and "creat[ed] a cultural tolerance of unconstitutional behavior." Knox has also alleged that he was injured by Pimm's "wrongful conduct." These facts are sufficient to state a claim for negligent supervision or training against the City. However, Knox cannot bring a claim for negligent supervision or training directly against Anderson because Alabama law does not recognize such a claim against a co-employee, even if the co-employee supervises other employees in his position. *See Ware v. Timmons*, 954 So. 2d 545, 555 (Ala. 2006). Thus, this claim is due to be dismissed.

### D. Unlawful Search/Seizure

Knox alleges that the City, "through [Pimm,] conducted an unlawful and unwarranted investigatory stop" that deprived Knox of his "constitutional right to be free from unlawful search and seizure." However, in his brief to this Court, Knox states that "[t]he stop itself was not unconstitutional." (Doc. 12 at 9.) Because Knox has not alleged in his complaint that other conduct unrelated to the investigatory stop constitutes an unlawful search or seizure, this claim is due to be dismissed.

## E. Denial of Due Process

Knox alleges that Defendants "denied [him] due process by concealing their behavior and tampering with evidence pertinent to his criminal defense." It appears that Knox seeks to bring a § 1983 claim based on a violation of his "due process right to a fair trial." *See McMillian v. Johnson*, 88 F.3d 1554, 1567, *modified on reh'g*, 101 F.3d 1363 (11th Cir. 1996); *see also Brady v. Maryland*, 373 U.S. 83 (1963). This right is violated where the prosecution suppresses evidence that is both favorable to the accused and material to guilt or punishment. *McMillian*, 88 F.3d at 1567 (quoting *Brady*, 373 U.S. at 87).

In order to sustain a § 1983 action for suppression of evidence against a law enforcement officer, the plaintiff must show that the officer's conduct was more than negligent and that it caused the denial of due process. *Porter v. White*, 483 F.3d 1294, 1308 (11th Cir. 2007). Here, Knox has alleged that Defendants acted intentionally in failing to provide the video of his arrest to the prosecution. However, Knox is unable to show that Defendants' actions deprived him of his right to a fair trial because under the circumstances alleged in the complaint, the video of his arrest was not "material." Suppressed evidence is considered to be material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v.*

*Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Stated another way, no constitutional deprivation occurs "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281. Knox alleges that he was acquitted of resisting arrest and found not guilty of disorderly conduct. He was found guilty only of following too closely, and a video of events that occurred after Pimm executed the traffic stop likely has no bearing on Knox's conviction for that offense. This claim is therefore due to be dismissed.[3]

## F. Civil Conspiracy

To adequately plead a claim for civil conspiracy under Alabama law, a plaintiff must allege concerted action by two or more persons to achieve an unlawful purpose or a lawful purpose by unlawful means. *Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013). Because "the conspiracy itself furnishes no cause of action," there must be some underlying "actionable wrong" to establish liability for the conspiracy. *Singleton v. Protective Life Ins. Co.*, 857 So. 2d 803, 814 (Ala. 2003); *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993). Knox appears to be alleging a claim for intentional spoliation of evidence because the video recording of

---

[3] If this Court has incorrectly concluded that Knox bases this claim on a *Brady* violation, he may move this Court for leave to amend his complaint in order to more clearly explain the constitutional deprivation that he alleges occurred.

his arrest is relevant to the instant case. However, such a claim is not an independent cause of action; rather, it is an evidentiary inference to be made at trial. *See, e.g.*, *Story v. RAJ Props., Inc.*, 909 So. 2d 797, 802 (Ala. 2005). Further, even if Knox's § 1983 claim based on an alleged *Brady* violation may serve as the underlying tort necessary to bring his state-law civil conspiracy claim, Knox's civil conspiracy claim fails because his § 1983 claim fails. *Jones*, 632 So. 2d at 439 ("[I]f the underlying wrong provides no cause of action, then neither does the conspiracy."). This claim is therefore due to be dismissed.

## G. Deliberate Indifference

Knox indicates in his brief to this Court that his "deliberate indifference" claim against the City and Anderson alleges a violation of the Eighth Amendment. (Doc. 13 at 6.) However, the Eighth Amendment's protections apply only to inmates "in a custodial setting." *See Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Because Knox does not allege facts against the City or Anderson that relate to his five-day incarceration, his claim for deliberate indifference is due to be dismissed.

## H. Outrage

In order to make out a claim for intentional infliction of emotional distress[4] under Alabama law, a plaintiff must demonstrate that (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress would likely result from his conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) the distress was severe. *Martin v. Hodges Chapel, LLC*, 89 So. 3d 756, 763 (Ala. Civ. App. 2011). Pimm asserts that his conduct was neither extreme nor outrageous because his arrest of Knox was "based on probable cause" and "effectuated by non-excessive force." A valid outrage claim requires that the defendant's conduct be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Thomas*, 21 So. 3d at 1238 (quoting *Gunter v. Huddle*, 724 So. 2d 544, 547 (Ala. Civ. App. 1998)).

Knox's outrage claim against Pimm is based on two instances of conduct. First, Knox alleges that Pimm "caused [Knox] to suffer great physical and emotional distress . . . when he violently forced [Knox] out of his vehicle and

---

[4] "[T]he tort of outrage is the same cause of action as intentional infliction of emotional distress." *Thomas v. Williams*, 21 So. 3d 1234, 1237 (Ala. Civ. App. 2008) (citing *Harrelson v. R.J.*, 882 So. 2d 317, 321–22 (Ala. 2003)). This Court uses the terms interchangeably.

slammed him on the ground into a ditch." Under Alabama law, conduct that "may amount to an assault, or to a violation of [the plaintiff's] constitutional rights" does not "necessarily constitute[] extreme and outrageous conduct sufficient to support an action for intentional infliction of emotional distress." *Newton v. Town of Columbia*, 695 So. 2d 1213, 1218 (Ala. Civ. App. 1997). However, the facts of this case as pled in Knox's complaint warrant a determination that Pimm's conduct during the arrest could qualify as extreme and outrageous. After Knox exited the vehicle to look under the hood, Pimm directed him to return to the car, and Knox complied. Pimm then, without ordering Knox to get out of the vehicle, handcuffed his left wrist and pulled him through the car's window. The use of such force against a compliant suspect accused of a minor traffic offense is sufficient to plead a claim for intentional infliction of emotional distress. Further, Pimm is not entitled to state-agent immunity with respect to this claim because intentional infliction of emotional distress is an intentional tort, and state officials do not receive state-agent immunity for willful or malicious conduct. *See Cranman*, 792 So. 2d at 402 n.13.

Knox next alleges that Pimm "engaged in behavior to conceal or destroy the videotape [depicting Knox's arrest] that was made from the police cruiser." However, Knox does not describe specific factual circumstances meriting such an

inference. Knox alleges that the video camera was working at the time of his arrest and that Pimm testified during the criminal trial that "he had requested the video be sent to the proper parties for investigation and he did not know what happened with the video." In the absence of "well-pleaded factual allegations" demonstrating that Knox did not receive the videotape as a result of Pimm's misconduct, Knox has failed to state a claim for intentional infliction of emotional distress as to the loss of the video recording.

## IV. CONCLUSION

For the reasons explained above, Defendants' motions to dismiss (Docs. 5, 6, 8) are due to be GRANTED IN PART and DENIED IN PART. Knox's assault and battery claim against Pimm in his official capacity and, to the extent he makes such claims, his state-law claims for negligent supervision and training against Anderson are due to be DISMISSED WITH PREJUDICE. Knox's § 1983 claims, to the extent he makes such claims, for negligent supervision and training, his § 1983 claims for unlawful search and seizure, denial of due process, and "deliberate indifference," and his state-law claims for civil conspiracy and, with respect to the video recording, outrage are due to be DISMISSED WITHOUT PREJUDICE. A separate order consistent with this Opinion will be entered herewith.

**DONE** AND **ORDERED** ON MAY 8, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

186289